ESTATE OF FRIEDMAN : FRIEDMAN, Appellant, vs. FRIEDMAN, Executor, and another, Respondents.

*June 12—July 1, 1947.*

182

For the appellant there were briefs by *Weisman & Weisman* of Racine, and oral argument by *Jacob M. Weisman*.

For the respondent Harry W. Friedman there was a brief by *Karon & Weinberg*, attorneys, and *Morris Karon* of counsel, all of Milwaukee, and oral argument by *Mr. Karon*.

For the respondent William H. Orenstein there was a brief by *Harry V. Meissner*, and oral argument by *A. C. Heller*, both of Milwaukee.

Rosenberry, C. J.   It is considered that in the interest of the proper administration of estates, reference should be made to the finding of the trial court to the effect that the order of March 30, 1945, was lawfully and properly granted.   This is an *ex parte* order.   This matter was dealt with in *Will of Robinson* (1935), 218 Wis. 596, beginning at the bottom of page 605, 261 N. W. 725.   We do not consider here what effect the voluntary appearance of the executor and the surviving partner may have had as to matters in which both were interested.   Certainly, an *ex parte* order without notice of hearing to anyone could in no way conclude the petitioner or affect her rights.   It is elementary law that in order to bind a party by an order or judgment, there must have been a notice and a hearing at which the party to be bound may appear and be heard.   While this is of no materiality in this case, we feel that reference should be made to it.

The testator entered into a partnership agreement with Orenstein on January 5, 1943.   His will was executed on the 26th day of May, 1943.   It is contended by the petitioner that by the terms of the will the petitioner was given a specific legacy amounting to forty-seven per cent of the fractional interest of the testator in the partnership business.   It is contended that because this legacy is specific, the interest of the widow under the will could not be disposed of under the power of sale continued in the will.   There is no doubt that a partner may provide by his will that the partnership shall continue notwithstanding his death.   Without considering the rights of the surviving partner or the rights of the personal representative of the deceased partner, it is clear that those rights were subject to the provisions of the will of the deceased partner.   By the terms of the will the deceased partner conferred upon his executor a very broad and comprehensive power of sale which applied to his interest in the partnership.   We find no authority for the proposition that this power of sale was limited by any provision in the partnership articles to the contrary.

The will speaks as of the date of the testator's death. The testator was an able and competent businessman and made the provision in his will after the execution of the partnership agreement and therefore must have had clearly in mind the effect of the power contained in the will upon his interest in the partnership. He gave a fractional interest in the partnership to others than his widow. In addition to that, there were debts of the estate which must be paid. The contention that the bequest to the widow in any way operated to suspend the power contained in the will cannot be sustained.

It is clear, as the trial court held, that under the power of sale contained in the will the executor had ample authority to dispose of the testator's share in the partnership business without applying to the court for authority to do so.

We shall not consider many of the questions raised by the petitioner on this appeal for the reason that there is no competent proof in the record that the interest of the estate of the testator was worth more than the amount paid to the executor by William H. Orenstein. There was expert testimony to the effect that the eighty vending machines and the vending-machine route as of March 30, 1945, had a value of between $8,000 and $9,000. The only other testimony offered as to the value of the partnership business was that of a certified public accountant who based his valuation on a computation made from the books of the partnership. We shall not state the method adopted by the accountant by which he arrived at the conclusion that the partnership business was worth somewhere between $70,000 and $100,000. Suffice it to say that the witness testified that the good will might be valued at $65,000. There is no testimony in the case as to the existence or the character and extent of the good will of the partnership. Apparently the accountant merely assumed that the good will was a very valuable asset of the partnership without any proof to that effect. While the court did not comment upon the testimony of the certified public accountant, it apparently disre-

garded it. Certainly there is nothing in the evidence from which it can be said that the finding of the trial court as to the value of the sixty-seven per cent interest of the testator in the partnership is against the great weight and clear preponderance of the evidence.

If we should assume, which we do not, that there was evidence of misconduct which would warrant a court in vacating the sale, there is no substantial evidence that the petitioner suffered any damage by reason of the sale. There is no evidence that a bidder would or could be produced who would pay more if the sale was set aside. While this is not a judicial sale, being a sale under a power conferred upon the executor by the will, nevertheless it will not be set aside unless it appears that the price was clearly inadequate to the damage of the petitioner. The inadequacy of the price must be established by competent proof. It cannot rest upon mere allegations of wrongful conduct. In this case, whether the petitioner was wronged depends almost entirely upon the value of the interest of the estate in the partnership. The trial court approved the sale and the entire transaction and acquitted the respondents of any fraudulent representation or conduct.

*By the Court.*—Order affirmed.